■ In the Matter of THOMAS J. WOLFSTICH, Petitioner, v NEW YORK STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a personal income tax assessment imposed pursuant to article 22 of the Tax Law.

A penalty was imposed on petitioner personally pursuant to subdivision (g) of section 685 of the Tax Law for willful failure to collect and pay withholding taxes. Petitioner was president of Thomas J. Wolfstich, Inc. (Wolfstich) which had failed to pay amounts withheld from its employees as withholding taxes during the years of 1970, 1971 and 1972. Petitioner contends that (1) the imposition of a penalty against him personally is barred by the applicable Statute of Limitations, (2) the tax proceeding against him failed to establish that he had willfully failed to pay withholding taxes as required by subdivision (g) of section 685 of the Tax Law, and (3) equitable estoppel bars the imposition of the penalty. We find that these contentions lack merit.

Respondent found that petitioner had been operating manager and president of Wolfstich during the years in question. It was he who hired and fired employees, issued payroll checks and made tax returns. In February of 1971, the Aetna Casualty and Surety Company (Aetna), which had issued Wolfstich a performance bond on the latter's work at the Tryon School, a New York State facility, was required to take over the project because Wolfstich had become insolvent. The State Department of Taxation and Finance had asserted tax liens against Wolfstich for $9,674.75 for 1970, $941.07 for 1971 and $359.20 for 1972, and issued tax warrants against Wolfstich. Wolfstich filed a claim against the State in the Court of Claims for moneys due and owing for the Tryon project. A judgment was secured for $86,371.78 against the State for the final payment due on the Tryon project. The State never paid the amount over to Wolfstich but applied it instead to the outstanding tax warrants and Federal taxes due. A satisfaction of the tax warrants was sent to Wolfstich. Aetna sued Wolfstich, the State and the United States of America for these moneys, contending that they were improperly applied to tax warrants and Federal taxes due and that Aetna had a superior claim to the moneys. Aetna prevailed and an order was entered on November 15, 1976 requiring that the money retained by the State be paid over to Aetna.[*]

Wolfstich obtained a judgment on May 9, 1977 for $300,000 for extra work done on the Tryon project. Petitioner contended in the tax proceeding that he agreed to a $300,000 settlement of Wolfstich's original claim of $836,371.78 ($86,371.78 for the final contract payment plus $750,000 for extra work performed) because he believed that no further liability would ensue to pay withholding taxes to the State. Petitioner also contended before respondent that it was Aetna rather than he who was in control of Wolfstich from February, 1971 and that it was Aetna which failed to make available sufficient funds to pay withholding taxes.

Respondent discounted petitioner's arguments that the State should be equitably estopped from collecting on the tax deficiency because it misled him in agreeing to the settlement. Respondent found that petitioner was in control of the corporation in 1970 when the largest deficiency occurred and that petitioner failed to show that he did not have authority to remit withholding taxes to the State when he worked under Aetna's direction in 1971 and 1972. The deficiency was sustained in its entirety.

---

[*]  The United States voluntarily agreed to repayment of moneys paid over to it and it was dropped as a party.

This case presents an issue of first impression, that is, does the three-year Statute of Limitations for the assessment of taxes under section 683 of the Tax Law bar the imposition of a penalty pursuant to subdivision (g) of section 685 of the Tax Law? We are of the opinion that the penalty for failure to pay withholding taxes under subdivision (g) of section 685 is wholly distinct from any assessment under section 683. The State's tax laws were enacted to conform to comparable provisions of the Federal law (Governor's Memorandum, NY Legis Ann, 1962, pp 402-406). Federal courts consider the penalty imposed upon individuals for willful failure to pay withholding taxes to be neither derivative of nor secondary to the corporate employer's liability for the same tax. It follows then that the penalty imposed against petitioner as a corporate officer is entirely distinct from an earlier assessment against the corporation. As a separate statutory liability, it need not be assessed within any particular period after the corporate assessment is made (see *Matter of Yellin v New York State Tax Comm.*, 81 AD2d 196; see, also, *Rosenberg v United States,* 327 F2d 362; *Bloom v United States,* 272 F2d 215, cert den 363 US 803).

We find petitioner's contention that he should not be found in violation of subdivision (g) of section 685 of the Tax Law for the nonpayment of withholding taxes in that willfulness was not established to be specious in view of his own testimony that, as president and operating manager of Wolfstich, he hired and fired employees and signed payroll checks and tax returns during the years in question. As a corporate official, he was responsible for the collection of taxes and he cannot absolve himself by disregarding his duty (*Matter of Ragonesi v New York State Tax Comm.*, 88 AD2d 707). Willfulness requires only a showing that something more than accidental nonpayment occurred (*Matter of Levin v Gallman,* 42 NY2d 32; see *Matter of Gardineer v State Tax Comm.*, 78 AD2d 928). The record supports the conclusion that the petitioner acted "willfully" within the meaning of subdivision (g) of section 685 of the Tax Law. During the times in issue, petitioner was directly involved in filing Wolfstich's tax returns. He admitted filing some returns without payment and issuing checks when there was no money in the bank account to cover them. His otherwise unsupported statement that Aetna failed to supply him with necessary funds was rejected by respondent, which was wholly within its prerogative. In any event, petitioner's argument does not apply to 1970 when he was solely in control.

We find petitioner's assertion that equitable estoppel bars tax liability because of his detrimental reliance in settlement of his claim against the State for extras in the Tryon project meritless.

Ordinarily, estoppel is not available against a public agency in the exercise of its governmental functions (*Matter of Daleview Nursing Home v Axelrod,* 62 NY2d 30).

The facts here do not in any way approximate the exceptional situations wherein estoppel against the State can be applied (see *Matter of Prey v County of Cattaraugus,* 70 AD2d 205). Petitioner concedes in his testimony before respondent that it was Aetna that had negotiated the settlement against the State and it was to Aetna that payment was made. We thus conclude that petitioner did not rely on the settlement as effecting a satisfaction of his tax liability, and estoppel does not therefore apply.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Main, Weiss and Mikoll, JJ., concur.