**ARP FILMS, INC., Amerex Films, Inc., and Claude S. Hill, Plaintiffs–Appellants, Cross–Appellees,**

v.

**MARVEL ENTERTAINMENT GROUP, INC., Defendant–Appellee, Cross–Appellant.**

Nos. 1042, 1043, Dockets 89–7905, 89–9061.

United States Court of Appeals, Second Circuit.

Argued April 9, 1990.

Decided June 19, 1990.

Jared Stamell (Joseph J. Tabacco, Jr., Stamell, Tabacco & Schager, E. Allan

Farnsworth, New York City, of counsel), for plaintiffs-appellants, cross-appellees.

Gideon Cashman (Stephen F. Huff, Jamie M. Brickell, Charles B. McKenna, Pryor, Cashman, Sherman & Flynn, New York City, of counsel), for defendant-appellee, cross-appellant.

Before KAUFMAN, FRIEDMAN * and MAHONEY, Circuit Judges.

PER CURIAM:

Plaintiffs-appellants, cross-appellees Arp Films, Inc. ("Arp"), Amerex Films, Inc. ("Amerex") and Claude S. Hill ("Hill") (collectively "plaintiffs") appeal, and defendant-appellee, cross-appellant Marvel Entertainment Group, Inc. ("Marvel") cross-appeals, from a judgment of the United States District Court for the Southern District of New York, Kenneth Conboy, *Judge*, entered July 27, 1989. Because the judgment from which the parties appeal is not a "final decision" within the meaning of 28 U.S.C. § 1291 (1982), the appeal is dismissed for want of appellate jurisdiction.

This case involves a long and complicated contract dispute embracing numerous issues. Given our determination to dismiss, we develop only minimally the events leading to this appeal.

The parties entered into the agreement at issue ("the Agreement") in September, 1976. Under its terms, a new company, Amerex, was formed to distribute certain cartoon films ("the Films") the rights to which were owned by Marvel. Arp was to own the stock of Amerex (half of which, however, would be held in escrow by Marvel); Hill, the president of Arp, was to undertake "the operational distribution responsibilities" of Amerex; and Amerex's revenues were to be divided on an agreed basis between Arp and Marvel.

One purpose of the Agreement was to resolve litigation then pending between the parties. Further disputes developed, however, and eventuated in the instant litigation. In July, 1986, Arp sued Marvel, claiming that Marvel had licensed films to

---

* Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation.

**688**

third parties in violation of the Agreement. Marvel counterclaimed, and also brought a separate action that was consolidated with the prior action, against Arp, Amerex and Hill, contending, *inter alia*, that they had breached the Agreement by failing to account properly and make the required payments to Marvel thereunder, and seeking a declaration that their rights under the Agreement had terminated.

Thereafter, on November 12, 1986, Marvel sent Hill a letter purporting to terminate the Agreement. Plaintiffs nonetheless continued to exploit their rights under the Agreement, but, in or about March, 1987, ceased paying Marvel its share of the distribution receipts and ceased accounting therefor as required by the Agreement. On September 2, 1987, Marvel wrote a letter to Hill asserting, without prejudice to Marvel's prior position that plaintiffs had no continuing rights under the Agreement, that all such rights were in any event terminated for failure to account and make payments to Marvel since March, 1987.

In a memorandum opinion dated May 24, 1988 and order dated October 25, 1988, the district court granted partial summary judgment to Marvel, ruling that plaintiffs had materially breached the Agreement by electing to continue to exercise their rights thereunder while refusing, since March, 1987, to make the required reports and payments, and that the Agreement accordingly terminated on September 2, 1987.

A six-week jury trial and a number of post-trial motions followed, after which a judgment was entered on July 27, 1989 in accordance with the court's pretrial summary judgment ruling and the jury's verdict:

a) terminating the Agreement and requiring plaintiffs to account to Marvel for plaintiffs' exploitation of the Films "for the period from the date upon which [plaintiffs] ceased paying and reporting to Marvel for the exploitation of Marvel's film properties ... through and including the present," as well as for all exploitation of the Films pursuant to the Agreement;

b) requiring Marvel to pay plaintiffs the separate sums of $293,480, and $1,220,000 plus prejudgment interest, and Arp to pay Marvel $137,000 plus prejudgment interest, in each instance (i) "subject to and following the completion of the accounting mandated by the judgment," and (ii) allowing a variation to "such lesser net amount, if any, shown to be due ... by such accounting," in accordance with jury verdicts on various contractual issues;

c) requiring Arp and Marvel to make additional payments to each other in accordance with formulae provided by the Agreement, in some instances only "following the completion of such accounting;" and

d) directing that "the accounting mandated by this Judgment shall be referred to a Magistrate for purposes of assuring compliance with this Judgment," and that the district court would retain continuing jurisdiction over the parties.

The accounting was then referred to Magistrate Leonard A. Bernikow on August 1, 1989. In a subsequent order entered September 25, 1989, the court directed, *inter alia*, that:

The parties shall submit a Consent Stipulation to this Court by September 22, 1989 setting forth the precise manner in which plaintiffs shall produce their accounting. If the parties can not agree upon such a Stipulation, each party shall submit a proposed order by that date and the Court shall provide Magistrate Bernikow with an order setting forth plaintiffs' obligations in this regard.

Plaintiffs appealed from the district court judgment on October 11, 1989, and Marvel cross-appealed on October 24, 1989. In its brief on appeal, Marvel contended that there were substantive matters at issue in the accounting before Magistrate Bernikow, and that the appeal to this court was accordingly premature. Plaintiffs responded that all of the rights and liabilities of the parties had been adjudicated, and the appeal was therefore properly taken. We then requested letter briefs from the parties addressing the issue of appealability and advising as to the current status of the accounting.

Marvel's counsel submitted with his letter brief a copy of a letter dated March 12, 1990 from plaintiffs' counsel to Magistrate Bernikow which stated that the prior submissions of the parties "show a variety of disputes which leave the parties about $200,000–$250,000 apart," and requested a conference to deal with the following issues:

1. Does the jury verdict constitute *res judicata* that precludes Marvel from claiming amounts Arp deducted for prints and foreign taxes?

2. Should foreign currencies be converted into U.S. dollars in determining the credit to which Marvel is entitled?

3. Is the stipulation about amounts due, to which the parties agreed at trial, binding and enforceable?

In its responding letter brief, plaintiffs' counsel stated that "[f]inal determination of the credit [due Marvel under the formula stated in the judgment] does not in any way effect [sic] the jury's verdicts, the amounts awarded by the jury, or the Court's grant of partial summary judgment." He cited *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), for the proposition that an appeal may be taken during the pendency of an accounting, and questioned the *bona fides* of the positions taken by Marvel in the accounting, but conceded that "[i]n the accounting, the present gap between the parties is $278,168.29."

"As a general rule, the federal courts of appeals have jurisdiction only over appeals from 'final decisions' of the district courts, that is, over decisions which end the litigation on the merits and leave nothing for the court to do but execute the judgment." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 841 F.2d 494, 496 (2d Cir.1988) (citing *Taylor v. Board of Educ.*, 288 F.2d 600, 602 (2d Cir.1961) (citing *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945))). Accordingly, "only when nothing save ministerial tasks relating to computation of damages remains can a mere determination of liability be construed as a 'final decision.'" *Caradelis v.*

*Refineria Panama, S.A.*, 384 F.2d 589, 591 (5th Cir.1967).

In view of these authorities, it is apparent that the instant appeal is premature. The issues pending before Magistrate Bernikow go far beyond simple "ministerial tasks relating to computation of damages," *id.* Rather, they involve questions of law that might well require rulings by the district court, which in turn could become the subject of a future appeal. It follows that the judgment of the district court cannot be considered a "final decision" within the meaning of 28 U.S.C. § 1291 (1982).

*Budinich* is not to the contrary. That case reiterated *Catlin's* general rule of finality, *Budinich*, 486 U.S. at 199, 108 S.Ct. at 1720, but concluded that "a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case," *id.* at 202–03, 108 S.Ct. at 1721–22. That ruling has no application here.

Accordingly, the appeal is dismissed for want of appellate jurisdiction.