**John S. PEREIRA, as Trustee of Trace International Holdings, Inc. and Trace Foam Sub, Inc., Plaintiff,**

v.

**Marshall S. COGAN, Saul S. Sherman, Andrea Farace, Frederick Marcus, Robert H. Nelson, Philip Smith, Karl Winters, Tambra King, Defendants.**

**No. 00 Civ. 619(RWS).**

United States District Court, S.D. New York.

July 17, 2002.

LeBoeuf, Lamb, Greene, & MacRae, L.L.P., New York City, by John P. Campo, Theodore J. Fischkin, Alison J. Chen, of counsel, for plaintiff.

Salomon Green & Ostrow, P.C., New York City, by Alec P. Ostrow, of counsel, Morvillo, Abramowitz, Grand, Iason & Silberberg, New York City, by Elkan Abramowitz, of counsel, for Marshall S. Cogan.

Swidler, Berlin, Shereff, Friedman, New York City, by Guy Petrillo, of counsel, for Saul S. Sherman.

Piper Marbury Rudnick & Wolfe, LLP, New York City, by Robert A. Meister, Michael S. Etra, of counsel, for Robert H. Nelson, Philip Smith, Karl Winters, and Tambra King.

## OPINION

SWEET, District Judge.

Defendants Marshall S. Cogan, Saul S. Sherman, Andrea Farace, Frederick Mar-

cus, Robert H. Nelson, Philip Smith, Karl Winters, and Tambra King (collectively the "Defendants") have moved to exclude the testimony of Irving Kagan, Esq. ("Kagan"), the proposed corporate governance expert witness of plaintiff John S. Pereira, as Chapter 7 Trustee (the "Trustee") of Trace International Holdings, Inc. ("Trace International") and Trace Foam Sub Inc. (collectively "Trace").

For the following reasons, the motion is granted in part and denied in part.

## Parties

Trace International is a Delaware corporation. It and its subsidiary Trace Foam filed for protection under Chapter 11 of the Bankruptcy Code on July 21, 1999. The cases were converted into proceedings under Chapter 7 on January 24, 2000, and the Trustee was appointed on January 25, 2000.

The Trustee's complaint contains six counts against Marshall S. Cogan ("Cogan") and seven other former Trace directors and/or officers: Saul S. Sherman, Andrea Farace, Frederick Marcus, Robert H. Nelson, Philip Smith, Karl Winters, and Tambra King.

## Prior Proceedings

The parties and events discussed herein are described in greater detail in previous opinions, including *Pereira v. Cogan*, No. 00 Civ. 619, 2001 WL 243537 (S.D.N.Y. March 8, 2001) and *Pereira v. Cogan*, 267 B.R. 500 (S.D.N.Y.2001), familiarity with which is presumed.

The defendants filed this instant motion on March 18, 2002. A hearing was held on April 17, 2002, and the motion was considered fully submitted at that time.

On May 10, 2002, the Trustee's motion to strike the defendant's jury demand was granted as to Counts II, IV and V of the Trustee's Amended Complaint. *Pereira v. Cogan*, 2002 WL 989460 (May 10, 2002). That leaves three counts, Counts I, III, and VI, before a jury. In addition, the Trustee has said he will dismiss Count III. Therefore, the primary Counts to which Kagan's testimony will be relevant (Counts II, IV and V) will not be heard by a jury. However, his testimony is also relevant, in lesser degree, to Count VI, concerning whether Cogan is the alter ego of Trace.

## The Testimony

The Trustee proposes to call Kagan to testify as an expert witness on corporate governance.

According to Kagan's expert report, he was admitted to the New York State Bar in 1958, after receiving his L.L.B. from New York University School of Law. After approximately two years in private practice, he joined the U.S. Department of Justice, Antitrust Division, in 1960, eventually becoming Acting Assistant Chief of the New York Field Office of the Division.

In 1968, Kagan joined Hertz Corporation as its trade regulation counsel and, after several promotions, was named Senior Vice President in 1983. Kagan remained as Senior Vice President and General Counsel of Hertz until 1986. In this role, Kagan was responsible for directing and managing the legal affairs of the organization worldwide, including all aspects of its corporate governance practice and procedures in connection with its parent company.[1]

---

1. While Kagan was at Hertz, the company was a wholly owned subsidiary of RCA Corporation (a company on the New York Stock Exchange) ("NYSE") and in 1985 become a wholly owned subsidiary of UAL Corporation (also a NYSE company). Hertz, while a non-public entity, issued a variety of public debt and was subject to certain SEC filing and reporting requirements. It was also subject to other laws and regulations applicable to its business worldwide.

In 1986, Kagan joined GAF Corporation ("GAF"), a NYSE company, as its Senior Vice President, Secretary, and General Counsel. As a public company, GAF was subject to all the rules and regulations governing public entities, and all the laws applicable to its businesses. In his position, he was responsible for all of GAF's legal affairs, including its corporate governance systems.

In 1989, GAF became a private company following a management-led leverage buyout, and Kagan became a member of its Board of Directors. Kagan retired as Senior Vice President and General Counsel in 1991, remaining as a board member until early 1993.

Since that time, Kagan has acted as general counsel or special counsel for various companies and has handled a variety of corporate governance issues in those capacities. Kagan also acts as counsel to a private investment and management consulting group. Since August 2001, Kagan has been of counsel to the law firm of Pryor Cashman Sherman & Flynn LLP.

Over the last ten years, Kagan has taught a law school course on the subject of corporate lawyering at NYU School of Law, Benjamin N. Cardozo School of Law and the University of Pennsylvania School of Law. Kagan is co-author of "Corporate Law Departments, 3d Edition" (PLI 1998, 2000, 2001), which contains a section discussing corporate governance. Kagan also appears as a guest commentator on current legal events and issues for FOX News Channel and Court TV.

Kagan states in his expert report that in forming his opinions therein, he examined and relied upon various documents in the case, including the second amended complaint and answer of Cogan, interrogatory responses, depositions, and various memoranda of law. Kagan also examined and relied upon the Trace Board Minutes and Unanimous Consent Resolutions in the period 1990 to May 1999, as well as opinions issued by this Court in this case.

Kagan begins his report with five "principles and rules guiding corporate practice" that are "well established" and had been "articulated by the Court in the two opinions rendered thus far." Report, at 4. He continues to discuss general principles of corporate governance for several more pages. *Id.* at 4–8.

For the remainder of the report, Kagan then applies the principles he has put forward to the facts of this case. He concludes that the Trace Board "failed to discharge its fundamental oversight responsibilities and duty of care in managing Trace's business and affairs," in that it allowed the controlling shareholder, Cogan, to manage the business and affairs of the company without any restraint. *Id.* at 8. Kagan also concludes that the board members "were not disinterested," did not maintain any regular or consistent meeting schedule as dictated by good corporate governance practices, formed no functioning committees to ensure accountability. *Id.* at 8–9. The board members showed allegiance only to Cogan, rather than the interests of Trace, and were not instructed in their statutory duties and responsibilities. *Id.* at 10. Kagan also concludes that Cogan's behavior "essentially emasculated the Board's functions and encroached upon its rightful duties" and that Cogan ran Trace "for his personal benefit." *Id.* at 12.

### Discussion

Defendants challenge Kagan's testimony on three grounds: (1) Kagan would usurp the role of the court by testifying as to legal standards; (2) Kagan would improperly usurp the role of the jury; and (3) Kagan's testimony runs afoul of *Daubert* and *Kumho*.

Since the time that the parties submitted their papers for this motion, it has been determined that only one of the Counts to which Kagan's testimony is relevant will be decided by a jury. That is Count VI, concerning whether Cogan should be considered the alter ego of the corporation. The Court will decide the other counts concerning potential breaches of corporate fiduciary duties.

The use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir.1991) (*citing United States v. Scop,* 846 F.2d 135, 139–40 (2d Cir.1988); *Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 510–11 (2d Cir.1977)).

■ As a result, an expert's testimony on issues of law is inadmissible. *Id.* An expert may, however, include factual conclusions and opinions embodying legal conclusions that encroach upon the court's duty to instruct upon the law. *Id.* In *Marx,* for instance, it was held that an expert's legal opinion on the meaning of certain contract terms was outside the witness's area of expertise and was also an invasion of the court's authority to instruct the jury on the applicable law. *Marx,* 550 F.2d at 509–10. In *Scop,* an expert's repeated statements that defendants' conduct established a manipulative and fraudulent scheme within the meaning of the securities laws exceeded the permissible scope of opinion testimony. *Scop,* 846 F.2d at 139. The *Bilzerian* court concluded, based on these precedents, that "although an expert may opine on an issue of fact within the jury's province, he may not

give testimony stating ultimate legal conclusions based on those facts."

■ The following of Kagan's statements, as ultimate legal conclusions, must therefore be struck:

- "It is my opinion … that, in the relevant period, the Trace Board, a fairly experienced and knowledgeable group of business people, failed to discharge its fundamental oversight responsibilities and duty of care in managing Trace's business and affairs." Kagan Rep., at 8.

- "In particular, by its inaction, and lack of diligence, responsiveness and attention to the material aspects of Trace's dealings with … Cogan, the Board allowed him, in effect, to manage the business and affairs of the company, without any restraint upon, or critical review (or any review) or objection to, any of his activities, decisions or proposals." *Id.*

- "The Board members were not disinterested…."[2] *Id.*

- "They did not, in my opinion, exhibit any prudent, independent behavior or sound, objective discretion in the exercise of their functions." *Id.*

- "I am of the opinion that the Board, insofar as the record reveals, essentially abdicated its fundamental responsibilities to the company itself; instead, it demonstrated an allegiance to Cogan and to his self-interests." Kagan Rep., at 10.

- "Upon examination, it appears that all such decisions were actually consistent with the controlling shareholder's interests, without regard to the corporation's paramount interests." *Id.*

---

**2.** The parenthetical in that sentence is a factual statement and is not stricken except inasmuch as necessary to make grammatical sense.

- "Based on their own background and business experience, they should have known better, but did nothing in this regard; they simply ignored their duties." *Id.*

- "In my opinion, [Trace's General Counsel Philip Smith] was clearly wrong." *Id.*

- "In my view, nobody charged with protecting the corporation and advancing its interests took the time or effort, or exercised the care necessary, to perform that task [of creating compliance programs, etc.]." Kagan Rep., at 11.

- The paragraph beginning "In essence ..." in its entirety. *Id.*

- The two sentences at the top of page 12 from "By contrast ...." to "without any restrictions." *Id.* at 12.

- "In my considered opinion, and for the reasons expressed, Trace's Board failed to exercise its fundamental duties and responsibilities on behalf of the corporation and took no steps to cure its deficiencies. It ignored the recognized standards by which it was obliged to govern the company, and failed entirely to address or control the actions of Trace's principal owner." *Id.*

■ The defendants argue that the preliminary section of Kagan's report, discussing his opinion about good corporate practice based on industry custom, is untenable as usurping the role of the Court. This argument does not hold. First, Kagan lists five "principles and rules guiding corporate governance practices." These principles and rules are taken directly from previous opinions in this case, however, and serve merely as part of a "longer

exposition" properly offered by the expert. *Fiataruolo v. United States,* 8 F.3d 930, 942 (2d Cir.1993); *see also United States v. Duncan,* 42 F.3d 97, 103 (2d Cir.1994); *Pagnucco v. Pan Am. World Airways, Inc. (In re Air Disaster at Lockerbie Scotland),* 37 F.3d 804, 827 (2d Cir.1994); *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir.1991). They may remain.

Second, the defendants cite deposition testimony by Kagan that he will testify as to "legal requirements." As the Trustee points out, eight of those nine times, the word "legal requirement" came from the mouth of the defense counsel deposing Kagan.[3] In any case, the Trustee will be submitting the report, rather than defense counsel's deposition, into evidence. If Kagan attempts to testify at trial as to a legal requirement, an objection may be made and will be considered at that time.

■ The defendants point out that Kagan's report also seeks to define the term "alter ego," which is a subject on which the jury will need to be instructed for the purposes of deciding Count VI. Kagan stated: "[S]hould it be determined that the board in such a setting is not appropriately fulfilling its duties and responsibilities of due care, loyalty and fair dealing to the corporate body, either by abdicating or so neglecting its duties and responsibilities as to allow its controlling share-holder to direct or conduct the corporation's material actions or decisions in favor of his self interests rather than those of the corporation as a whole, then it can be said that the entity is merely the *alter ego* of that dominant owner." Kagan Rep. at 7–8. The Court has the exclusive responsibility to define for the jury "[t]erms that are not self-defining, but rather than have been the subject of diverse judicial interpreta-

---

**3.** The last "legal requirement," that directors must "act in a disinterested manner," does no more than state, as plaintiff's counsel pointed out in oral argument, a truism "like one plus one equals two."

tions." *United States v. Jacques Dessange, Inc.,* 2000 WL 294849, at \*2 (S.D.N.Y. March 21, 2000) (*citing United States v. Scop,* 846 F.2d 135, 140 (2d Cir. 1988)). The statement cited above will therefore be stricken.

■ Defendants also argue that Kagan failed to perform proper methodology as required under *Daubert* and its progeny. The Trustee retorts that Kagan is merely testifying as to custom and practices in the industry and applying those customs to the facts presented here. There is no disagreement that experts may testify as to the customary practices in a profession or industry. *E.g. Roniger,* 2000 WL 1191078, at \*5; *Media Sport & Arts v. Kinney Shoe Corp.,* 1999 WL 946354, at \*3–4, 1999 U.S. Dist. LEXIS 16035, at 9, 11–12 (S.D.N.Y. Oct. 18, 1999) (excluding expert's conclusion "as impermissibly invad[ing] the province of the jury" but permitting him to testify only on industry standards).

From pages 4 to 8, Kagan details a number of examples of what he believes good corporate practices require according to industry and custom. These examples may be useful to the trier of fact, and Kagan's thirty years of experience in the corporate governance field provides a reliable foundation for his opinions on good corporate practices.[4]

The defendants argue that these examples are not based on custom and practice in the industry, but on Kagan's legal opinion of what officers and directors are required to do. This argument is unavailing as Kagan based this notion on his thirty years' of experience in the corporate gov-

ernance field and his observations of "good corporate practices." The very term "good corporate practices" suggests that the custom of the industry is at issue. That custom assuredly is based in good part on what others believe the law to require, but this tenuous connection is insufficient. Therefore, pages 4 to 8 shall not be stricken except as otherwise specified above.

### Conclusion

The defendant's motion is granted in part and denied in part as detailed above.

It is so ordered.

---

4. Advisory Committee Notes to Rule 702—2000 Amendments ("[T]he text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."); *see also Page Mill Asset* *Mgmt. v. Credit Suisse First Boston Corp.,* No. 98 Civ. 6907, 2001 WL 863552, at \*3, 2001 U.S. Dist. LEXIS 10803, at \*7 n. 1 (S.D.N.Y. July 27, 2001) ("[E]xperience alone may provide a sufficient foundation for expert testimony.").