Matter of Black v New York State Tax Appeals Trib. (2022 NY Slip Op 04200)

Matter of Black v New York State Tax Appeals Trib.

2022 NY Slip Op 04200

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

532477
[*1]In the Matter of Christopher Black, Petitioner,
v
New York State Tax Appeals Tribunal et al., Respondents.

Calendar Date:April 26, 2022

Before:Egan Jr., J.P., Lynch, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Greenberg Traurig, LLP, Albany (Henry M. Greenberg of counsel), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for Commissioner of Taxation and Finance, respondent.

Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining two notices of deficiency of employee withholding taxes against petitioner.
Petitioner began his career in 1986 as a journeyman carpenter for Nastasi & Associates. In 1994, petitioner formed New England Construction Company (hereinafter NECC), a drywall, acoustical ceilings and millwork construction company. Petitioner's purpose, in part, in forming NECC was to have the corporation certified as a minority business enterprise to gain access to state contracts with minority access goals. Thereafter, petitioner and the owners of Nastasi & Associates arranged for petitioner to take over Nastasi & Associates' minority subcontracts. At all relevant times, petitioner was president and a 51% shareholder of NECC, with the remaining shares belonging to family members and owners of Nastasi & Associates. According to petitioner, in 2005, Anthony Nastasi (hereinafter Nastasi) took over the financial affairs and management of NECC. Additionally, NECC and Nastasi & Associates entered into an agreement providing that, upon Nastasi's written demand, petitioner would immediately resign as president of NECC. Commencing in 2012, NECC began to encounter tax liabilities, including issues regarding employee withholding taxes. In 2015, Nastasi ultimately terminated petitioner pursuant to the terms of the 2005 agreement, purchased petitioner's shares of NECC and became its sole owner.
In December 2015, respondent Department of Taxation and Finance issued petitioner, for the periods ending December 2014, March 2015 and June 2015, three notices of deficiency for outstanding withholding taxes owed by NECC and sought to hold petitioner personally liable for the outstanding taxes owed. Petitioner thereafter filed a petition with the Department seeking to challenge the notices of deficiency and to absolve himself of liability on the grounds that, under Tax Law § 685 (g), he was not a "responsible person" of NECC.[FN1] Following a hearing, an Administrative Law Judge, among other things, sustained the notice for the period ending December 2014 and partially sustained the notice for the period ending March 2015.[FN2] Upon administrative appeal, respondent Tax Appeals Tribunal found that, based upon various factors, petitioner was a responsible person on behalf of NECC (see Tax Law § 685 [g], [n]) and determined that he was personally liable. Additionally, the Tribunal found that petitioner's failure to pay the withholding taxes was willful. Lastly, the Tribunal held that it was not obligated to defer to the IRS's parallel determination as the Department may conduct its own examination and reach its own factual conclusions. Petitioner then commenced this CPLR article 78 proceeding challenging the Tribunal's determination.
As an initial matter, we disagree with petitioner's contention that the Tribunal's determination [*2]was irrational in light of the IRS's determination absolving petitioner of liability as a responsible person for purposes of NECC's federal withholding tax liabilities. Although there is no dispute that 26 USC §§ 6671 (b) and 6672 (a) are parallel statutes with Tax Law § 685 (g) and (n), and that both the state and federal statutes require a showing that the taxpayer has actual authority in order to be a person responsible for collecting and remitting the corporation's withholding taxes, the Tribunal's determination was not based upon an erroneous legal standard contrary to that found under federal law, but upon the Tribunal's numerous factual findings based on the extensive record before it.
Turning to the merits, "[i]n cases where, as here, the issues argued before the Tribunal involved the specific application of broad statutory terms in a proceeding in which the agency administering the statute must determine it initially, this Court accords deference to the Tribunal's interpretation of the statute[] at issue and will not disturb the Tribunal's determination if it has a rational basis and is supported by substantial evidence" (Matter of Gans v New York State Tax Appeals Trib., 194 AD3d 1209, 1210 [2021] [internal quotation marks, brackets and citations omitted]; see Matter of Parikh v Schmidt, 200 AD3d 1237, 1239 [2021]; Matter of Toronto Dominion Holdings [U.S.A.], Inc. v Tax Appeals Trib. of the State of N.Y., 162 AD3d 1255, 1257 [2018], lv denied 32 NY3d 907 [2018]).[FN3] In view of the foregoing, the Tribunal neither incorrectly interpreted Tax Law § 685 (g), nor applied an improper test in determining who is a responsible person. We confirm.
As relevant here, "[a]ny person required to collect, truthfully account for, and pay over the tax imposed by [Tax Law article 22] who willfully fails to collect such tax or truthfully account for and pay over such tax or willfully attempts in any manner to evade or defeat the tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the sum of . . . the total amount of the tax evaded, or not collected, or not accounted for and paid over" (Tax Law § 685 [g]). "For purposes of subsection[] (g), . . . the term person includes an individual, corporation, partnership or limited liability company or an officer or employee of any corporation . . . who as such officer, employee, manager or member is under a duty to perform the act in respect of which the violation occurs" (Tax Law § 685 [n]).
In determining whether petitioner was a responsible person for the time periods in question, the test is a factual one to be determined after consideration of a myriad of factors, including "whether the petitioner signed the tax return, derived a substantial part of his [or her] income from the corporation, or had the right to hire and fire employees. While no one factor is controlling, all must be considered" (Matter of Malkin v Tully, 65 AD2d 228, 231 [1978[*3]] [citations omitted]; see Matter of Menik v Roth, 280 AD2d 702, 702-703 [2001]; Matter of Risoli v Commissioner of Taxation & Fin., 237 AD2d 675,676 [1997]; Matter of Basch v New York State Tax Commn., 134 AD2d 786, 787 [1987]). Notwithstanding evidence that could support a contrary determination, it is undisputed that petitioner was president, the majority shareholder, had check signing authority, was involved in daily field operations and derived a substantial part of his income from NECC. Additionally, petitioner intentionally held himself out to third parties, as well as to the Division of Taxation itself, as the contact person and responsible person for New York taxes by signing state tax returns and checks accompanying the returns, executing a sales tax certificate of authority listing himself as the corporation's responsible person, filling out the Division's "Responsible Person Questionnaire," and maintaining communication with the Department. Accordingly, respondent's determination that petitioner is a responsible person has a rational basis, is supported by substantial evidence and must be upheld (see Matter of Menik v Roth, 280 AD2d at 703; Matter of Risoli v Commissioner of Taxation & Fin., 237 AD2d at 677; Matter of Basch v New York State Tax Commn., 134 AD2d at 788). Although petitioner provided evidence that Nastasi exerted control over NECC's financial responsibilities, we may not disturb the Tribunal's determination despite the existence of evidence in the record to support a contrary conclusion (see Matter of Fuchsberg & Fuchsberg v Commissioner of Taxation & Fin., 13 AD3d 831, 834 [2004]; Matter of Menik v Roth, 280 AD2d at 703).
Petitioner also contends that the Tribunal erred in finding a willful failure on his part because he was powerless to direct payment of the taxes, as Nastasi was in complete financial control of NECC and directed what bills should be paid. "Willfulness . . . may be found when the act, default or conduct is consciously and voluntarily done with knowledge that as a result, trust funds belonging to the [g]overnment will not be paid over but will be used for other purposes. Something more than accidental nonpayment is all that is required" (Matter of Hopper v Commissioner of Taxation & Fin., 224 AD2d 733, 738 [1996] [internal quotation marks, brackets and citations omitted], lv denied 88 NY2d 808 [1996]). Although petitioner might not have initially known that the taxes were not paid due to Nastasi writing and directing the checks that petitioner should sign, it is undisputed that petitioner became aware of the tax liabilities from employees of the corporation and the Department, yet failed to take affirmative steps to ensure payment. Despite Nastasi's repeated representations that he would obtain credit to pay off the tax liability, petitioner himself did not seek to obtain financing to pay the taxes, nor did he attempt to correct Nastasi's mismanagement in failing to collect and remit the taxes [*4](see Kalb v United States, 505 F2d 506, 511 [2d Cir 1974], cert denied 421 US 979 [1975]; Gold v United States, 506 F Supp 473, 479 [ED NY 1981], affd 671 F2d 492 [2d Cir 1981]). Instead, petitioner disregarded Nastasi's mismanagement and continued delegating to Nastasi the responsibility of remitting payment of the taxes to the Department (see Matter of Risoli v Commissioner of Taxation & Fin., 237 AD2d at 677; Matter of Wolfstich v New York State Tax Commn., 106 AD2d 745, 747 [1984]; Matter of Ragonesi v New York State Tax Commn., 88 AD2d 707, 708 [1982]). To the extent that petitioner's remaining arguments in support of annulment are properly before us, they have been examined and found to be lacking in merit.
Egan Jr., J.P., and Ceresia, J., concur.
Lynch, J. (dissenting).
We respectfully dissent and would annul the determination of respondent Tax Appeals Tribunal holding petitioner responsible for the tax liability of the corporation New England Construction Company (hereinafter NECC). At the outset, it must be acknowledged that petitioner, by his own account, engaged in a highly inappropriate scheme of falsely holding himself out as NECC's financial decision-maker for purposes of retaining its status as a minority-owned business enterprise (hereinafter MBE) (see generally Executive Law §§ 310 [1], [7] [a], [b], [c]; 5 NYCRR 144.2 [a], [b] [1]). Such behavior violated the MBE requirements (see Executive Law § 310 [1], [7] [b], [c]). Nevertheless, there are regulatory provisions to address such a scenario (see 5 NYCRR 144.4 [a]), and the question before this Court is not the appropriateness of petitioner's conduct, but the propriety of the Tribunal's determination that he should be held personally liable for the corporation's tax liability. In our view, the Tribunal erred in concluding that he should be.
Under state tax law, a person may be held personally liable for the tax liability of a business if, as relevant here, he or she is (1) "required to collect, truthfully account for, and pay over the tax imposed" and (2) "willfully fails to collect such tax or truthfully account for and pay over such tax" (Tax Law § 685 [g]). A person responsible for "collect[ing], truthfully account[ing] for, and pay[ing] over the tax" (Tax Law § 685 [g]) includes, in pertinent part, "an officer or employee of any corporation . . . who . . . is under a duty to perform the act in respect of which the violation occurs" (Tax Law § 685 [n]). The federal tax code contains a nearly identical provision as it relates to holding an individual personally liable for the federal tax liability of a business (see 26 USC § 6672 [a]), and defines a responsible "person" in virtually the same manner as Tax Law § 685 (n) (see 26 USC § 6671 [b]). Given that Tax Law § 685 (g) and 26 USC § 6672 are parallel statutes, the terms set forth therein must be construed in conformity unless a different meaning is clearly required (see Tax Law § 607 [a]; Matter of Friedsam v [*5]State Tax Commn., 64 NY2d 76, 80 [1984]; Matter of Levin v Gallman, 42 NY2d 32, 33-34 [1977]; Matter of Baum v State Tax. Commn., 89 AD2d 646, 647 [1982], lv denied 57 NY2d 607 [1982]). While this rule does not preclude the state and federal taxing authorities from coming to different conclusions on an identical set of facts, it does require the state authority to apply the same standard as the federal authority when construing the meaning of responsible person under Tax Law § 685 (g), as there is no clear indication that the Legislature intended the term to have a different meaning from how it is used in 26 USC § 6672 (a).
Several factors are relevant in determining whether an individual is a person responsible for paying the tax under 26 USC § 6671 (b), including, among other things, whether the individual "(1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority" (Vinick v United States, 205 F3d 1, 7 [1st Cir 2000]; see Fiataruolo v United States, 8 F3d 930, 939 [2d Cir 1993]). Although no single factor is determinative and the "totality of the circumstances" must be considered (Vinick v United States, 205 F3d at 8 [internal quotation marks and citation omitted]), the "core question 'is whether the individual has significant control over the enterprise's finances'" (Fiataruolo v United States, 8 F3d at 939 [emphasis added and emphasis omitted], quoting Hochstein v United States, 900 F2d 543, 547 [2d Cir 1990]). This test "is meant to encompass all those connected closely enough with the business to prevent the tax default from occurring" (Fiataruolo v United States, 8 F3d at 939 [internal quotation marks, brackets and citation omitted]), but it "is not meant to ensnare those who have merely technical authority or titular designation" (id.).
Turning to that analysis, the record demonstrates that Anthony Nastasi (hereinafter Nastasi), rather than petitioner, was the person who had significant control over NECC's finances during the tax years in question. To that end, the record contains an exhibit — which was entered into evidence at the hearing — memorializing a December 2005 agreement between petitioner and Nastasi & Associates, Inc. In that agreement, petitioner effectively ceded control of the business to Nastasi, agreeing that, upon Nastasi's written demand, he would resign as president of NECC and sell 95% of his stock shares to Nastasi for the nominal sum of one dollar per share. During the administrative hearing, petitioner explained that Nastasi took control of the business around that time and petitioner mainly became responsible for field [*6]operations. Petitioner maintained that Nastasi was responsible for "[e]verything inside the office as far as payments and all the liabilities and distributions as far as checks and taxes." Two other witnesses who worked with NECC during the relevant timeframe corroborated that contention, explaining that Nastasi decided what tax liabilities to pay on behalf of the corporation and that petitioner did not have any authority in that regard.
Also received into evidence at the hearing was the appeals protest petitioner filed in the federal tax proceeding. That submission included two affidavits from Nastasi in which he averred that petitioner "handled the operating activities of NECC[], but did not handle the financial responsibilities and the decisions of NECC[]." Nastasi further explained that petitioner had "signature authority on the bank accounts only to enable him to handle items related to running the operations of [the business; h]is authority did not include payment of . . . accrued liabilities, tax obligations, or anything beyond the company's general operations." Notably, Nastasi admitted that, during his tenure as director of the corporation, he "exercised control over the financial policies of [NECC]," including "authorizing payments for tax obligations . . . and accrued liabilities." Based on that information, the Internal Revenue Service determined that petitioner was not personally liable for the corporation's failure to make trust fund payments.
Rather than analyzing petitioner's control over the company's finances, the Tribunal framed the issue as "whether petitioner presented facts showing that [he] lacked control and authority over the affairs of [NECC]" (emphasis added), ultimately finding that petitioner was a responsible person insofar as he: (1) held himself out as an officer and the majority shareholder of the business; (2) managed the field operations; (3) had check-signing authority; (4) filed tax returns on behalf of the business; and (5) had a considerable interest in the company. The "affairs" of a business is a far broader concept than the "finances" of a business. Although the factors cited by the Tribunal are certainly relevant to the finance analysis, titular authority is insufficient and the Tribunal's characterization of the question before it raises uncertainty as to whether it applied the correct standard. Indeed, the Tribunal did not make any specific findings that petitioner had "significant control over the enterprise's finances" — the "core" component of the inquiry (Fiataruolo v United States, 8 F3d at 939 [internal quotation marks, emphasis and citation omitted]). In the absence of any such consideration, the Tribunal's determination that petitioner was a responsible person within the meaning of Tax Law § 685 (g) cannot be sustained.
Turning to the issue of willfulness, "the test is whether the act, default, or conduct is consciously and voluntarily done with knowledge that as a result, trust [*7]funds belonging to the [g]overnment will not be paid over but will be used for other purposes" (Matter of Levin v Gallman, 42 NY2d at 34). Concluding that petitioner acted willfully in failing to remit the required taxes, the Tribunal relied on a series of cases holding that an individual "cannot absolve [himself or herself of liability] merely by disregarding [his or her] duty and leaving it to someone else to discharge" (Matter of Ragonesi v New York State Tax Commn., 88 AD2d 707, 708 [1982]; see Matter of Levin v Gallman, 42 NY2d at 34; Matter of Risoli v Commissioner of Taxation & Fin., 237 AD2d 675, 677 [1997]; Matter of Capoccia v New York State Tax. Commn., 105 AD2d 528, 529 [1984]). Using this reasoning, the Tribunal found that petitioner's "continued reliance on another[, i.e., Nastasi,] to pay withholding tax constituted a reckless disregard of his duty to act," satisfying the willfulness requirement.
The Tribunal is correct that a responsible person will not be absolved of his or her duty to pay withholding taxes simply by delegating that authority to another individual. However, the cases it relied on to support that proposition are factually distinguishable. In each case, the responsible person retained actual authority over the payment of the taxes at the time the tax liability was incurred (see e.g. Matter of Levin v Gallman, 42 NY2d at 34; Matter of Risoli v Commissioner of Taxation & Fin., 237 AD2d at 677; Matter of Ragonesi v New York State Tax Commn., 88 AD2d at 708). Here, by comparison, petitioner ceded control to Nastasi nine years before the subject tax liability came to fruition. As defined above, willfulness requires a showing that the delegation of control was done with knowledge that the trust funds would not be paid to the state. There is nothing in the record to indicate that NECC was not paying withholding taxes in 2005. Moreover, as the Administrative Law Judge recognized, the 2005 agreement gave Nastasi "carte blanche over the finances of the corporation." The operative point is that petitioner had no actual authority to compel Nastasi to make the required payments once he learned that NECC was in default. We recognize that the 2005 agreement was "one of [petitioner's] own making," as the Tribunal observed, and the wisdom of that agreement is not the issue. However, the Tribunal's determination that "petitioner's continued reliance" on Nastasi constituted willfulness is not rational, for by that point petitioner had no authority to intervene. In other words, this is not a "continued reliance" situation. For the foregoing reasons, we would annul the Tribunal's determination.
Aarons, J., concurs.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: In proceedings before the IRS, the IRS Appeals Office forwarded written correspondence to petitioner advising him that it determined that petitioner should be relieved of liability for certain trust fund recovery penalties assessed for the period December 31, 2012 through June 30, 2015 as it found that he was not a "responsible person" of NECC as defined under 26 USC § 6672 (a).

Footnote 2: Based upon Nastasi's termination of petitioner in February 2015, and the sale of petitioner's shares of stock to Nastasi in May 2015, the Administrative Law Judge cancelled the third notice of deficiency for the period ending June 2015.

Footnote 3: We disagree with petitioner's assertion that, in finding petitioner had not demonstrated he lacked "authority and control" rather than "actual authority," the Tribunal employed a fallacious standard, and, as such, substantial evidence analysis does not apply.