# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 86
In the Matter of Christopher
Black,
     Appellant,
     v.
New York State Tax Appeals
Tribunal, et al.,
     Respondents.

Henry M. Greenberg, for appellant.
Owen Demuth, for respondents.

CANNATARO, J.:

On this appeal, we are asked whether the determination of the Tax Appeals Tribunal challenged here was affected by an error of law. Specifically, petitioner and the dissenters argue that the Tribunal employed an incorrect legal test in making its determination, under

Tax Law § 685 (g), that petitioner was a person responsible for the collection and payment of employee withholding taxes on behalf of New England Construction Company, Inc. (NECC), a corporation of which petitioner was president and the majority shareholder, and on behalf of which petitioner had repeatedly held himself out as being responsible for payment of taxes. We conclude that the Tribunal committed no such error. Rather, in resolving the question before it, the Tribunal properly considered whether petitioner had the actual authority and effective power to pay the withholding taxes and, thus, was a "responsible person" under section 685. Moreover, substantial evidence supports the Tribunal's determination that petitioner willfully failed to pay the withholding taxes.

## I.

During the period at issue, petitioner was president and 51% shareholder of NECC, which engaged in interior finish construction, including dry wall construction, acoustical ceilings and mill work. Petitioner testified that he and his brother formed NECC in 1994 to have it certified as a minority-owned business enterprise (MBE). Petitioner and Frank Nastasi, his former employer, agreed that petitioner could do "minority participation work" for Nastasi's corporation, Nastasi and Associates.

Petitioner's brother left NECC after two years and petitioner acquired his shares. In 1995 or 1996, four individuals associated with Nastasi and Associates—including Anthony Nastasi—invested in NECC, resulting in petitioner becoming a 51% shareholder and the other four investors holding the remaining 49%. Anthony Nastasi ultimately became the sole owner of Nastasi and Associates and bought out the interests of other investors in

NECC, acquiring a 44% interest.[1]  In December 2005, petitioner entered into an agreement with Nastasi and Associates acknowledging that NECC was indebted to the former for more than $4 million.  The parties agreed that, upon the written demand of Anthony Nastasi, petitioner would resign as president of NECC and would be deemed to have sold his shares to Anthony Nastasi for $26.  All NECC assets remaining after satisfaction of its debt were to be distributed to Anthony and his brother Tom Nastasi (70%), petitioner (25%) and the remaining 5% to Lee.  Petitioner would then acquire all outstanding shares for $75 and be immediately reinstated as president.  Petitioner acknowledges that, by 2010, the Nastasis had invested perhaps $6 million in NECC, while petitioner invested, at most, $200,000 in the company.

Nevertheless, it was petitioner who represented NECC on tax matters before the Department of Taxation and Finance (hereinafter "the Department").  In that capacity, petitioner signed both the NYS-45 form (quarterly combined withholding, wage reporting and unemployment insurance returns) for the quarter ending December 31, 2014, and a check as payment for unemployment insurance amounts reported on that return.  In addition, petitioner signed NECC's 2011 application to register for a sales tax certificate of authority, on which he represented himself to the Department as the person who "oversees all" of NECC's "business activities."  Petitioner was also named as the sole contact on the "business contact information" form submitted to the Department in August

---

[1] The remaining 5% interest was owned by Richard Lee, another individual who was not involved in NECC's management.

2014 with respect to corporation tax, sales tax and withholding tax. He also listed himself as a "responsible person for [NECC]" in 2013 in connection with a sales and use tax audit and the Department's audit records show him as the "primary contact" during numerous communications between NECC and the Department from February 2012 to February 2014. Similarly, in 2012, petitioner signed a "responsible person questionnaire" in connection with a negotiated installment agreement to pay off outstanding tax debt. On that form he averred that he (1) was responsible for the remittance of sales tax for NECC; (2) participated in making significant business decisions; (3) was responsible for maintaining and managing NECC; (4) managed NECC and had knowledge and control over its financial affairs; (5) had the authority to pay or direct payment of NECC's bills or other business liabilities; (6) had the authority to act on behalf of the business with the Department; (7) hired and fired employees; and (8) negotiated loans, borrowed money for the business and guaranteed business loans. Petitioner also averred on the form that NECC checks were signed by him in "all circumstances" and that he was involved in "all financial affairs dealing with NEC[C's] day to day business."

Petitioner testified that, in February 2015, Anthony Nastasi requested that petitioner complete a questionnaire provided by a carpenter's union challenging NECC's failure to provide benefits to its unionized employees. Petitioner refused to fill out the form on the advice of counsel, at which point Nastasi invoked the December 2005 agreement, acquired petitioner's shares and purported to fire petitioner. Anthony Nastasi submitted a letter to the Department in April 2015 stating that petitioner had been relieved of his duties and

petitioner signed an agreement of sale in May 2015 transferring his shares in NECC to Nastasi and attached a letter of resignation.

Nonetheless, based on the documentation that petitioner had provided to the Department holding himself out as having significant control over NECC's financial affairs and the authority to pay NECC's tax obligations, the Department concluded that petitioner was a "responsible person" of NECC within the meaning of Tax Law § 685 (g). The Department issued notices of deficiency against petitioner, asserting withholding tax penalties against him. Petitioner protested the notices of deficiency and the matter proceeded to a hearing in August 2018 before the Division of Tax Appeals.

At the hearing, petitioner argued that his answers on the responsible person questionnaire were inaccurate and designed solely to maintain NECC's MBE certification. Petitioner claimed that, when he repeatedly approached Nastasi about delinquent taxes, Nastasi responded that the payment of taxes was Nastasi's responsibility and that NECC was Nastasi's company. Petitioner further claimed that he had no actual authority to pay the tax debts without Anthony Nastasi's approval, and that he had no authority to issue checks without Anthony Nastasi's permission. In addition, petitioner stated that NECC's checkbook was kept in the office of Nastasi and Associates, and petitioner would travel to that office once a week to sign checks prepared at Anthony Nastasi's behest. Petitioner further asserted that Nastasi kept a facsimile stamp of petitioner's signature. This testimony was corroborated by that of Mary Probst, NECC's controller during the time period at issue and an employee of petitioner at the time of the hearing, and Nastasi's attorney, Thomas Pillari. However, bank signature cards from 2012 indicated that

petitioner could withdraw funds independently but that withdrawals by Nastasi required petitioner's approval.

In further support of his claims that he had misrepresented his role on the responsible person questionnaire, petitioner presented evidence that, in 2014, the Port Authority of New York and New Jersey had decertified NECC as an MBE based on proof that it was "heavily dependent on another construction company, Nastasi & Associates, for financing, staffing, management and daily operations," as well as its conclusion that "Nastasi exerts a substantial amount of control over the operations of [NECC]." The Port Authority rejected as false petitioner's claims that Nastasi was merely a silent partner.

Petitioner also pointed to the IRS's determination that he was not personally liable for unpaid withholding taxes assessed against NECC under federal law. In 2015, the IRS issued petitioner a proposed assessment of penalties for NECC's unpaid federal withholding taxes. Petitioner protested that he lacked financial control over NECC. In connection with petitioner's protest, Nastasi submitted a declaration of trust fund responsibility for NECC. Nastasi also submitted an affidavit asserting that petitioner handled "the operating activities" of NECC but Nastasi alone controlled corporate financial disbursements, including tax payments, and petitioner had no access to corporate checks to make disbursements. Nastasi stated that petitioner "had signature authority on the [corporate] bank account only to enable him to handle items related to running the operations of [NECC]; his authority did not include payment of [NECC's] accrued liabilities, tax obligations or anything beyond the company's general operations." The IRS accepted petitioner's protest without elaboration.

Notwithstanding these claims, an Administrative Law Judge for the Department substantially upheld the state notices of deficiency, concluding that petitioner was a "responsible person" under Tax Law § 685 (g) until his departure from NECC in February 2015 when Nastasi exercised his authority under the parties' agreement. Upon appeal, the Tax Appeals Tribunal affirmed. The Tribunal framed the issue as "whether petitioner presented facts showing that [he] lacked control and authority over the affairs of NECC." It noted that the determination of whether an individual is a responsible person is factual, turning on a variety of factors. The Tribunal concluded that petitioner was "under a duty to collect and pay over withholding taxes" based upon the evidence that he was an officer and majority shareholder of NECC, managed its field operations, had check signing authority, filed tax returns on behalf of the company, had considerable economic interest in NECC and held himself out as a responsible person to third parties, including the Department. The Tribunal determined that petitioner's testimony that his prior representations were inaccurate failed to overcome this evidence. The Tribunal also found that petitioner's failure to pay withholding taxes was willful. Finally, although the Tribunal agreed with petitioner that the relevant federal and state tax law provisions should be construed in conformity with one another, it concluded that it was not required to give deference to the IRS's *factual* determinations regarding petitioner's status as a responsible person.

Petitioner then commenced this CPLR article 78 proceeding in the Appellate Division, which confirmed the Tribunal's determination (206 AD3d 1482 [3d Dept 2022]). The Court rejected petitioner's argument that the Tribunal's determination was irrational

in light of the IRS's determination that petitioner was not a responsible person within the meaning of the federal statute (*see id*. at 1483). In addition, the Court rejected the argument that, "in finding petitioner had not demonstrated he lacked 'authority and control' rather than 'actual authority,' the Tribunal employed a fallacious standard, and, as such, substantial evidence analysis does not apply" (*id*. at 1484 n 3).  The Court concluded that substantial evidence supported the Tribunal's determination that petitioner was a responsible person who willfully failed to remit NECC's withholding taxes, noting in particular that "petitioner intentionally held himself out to third parties, as well as to the Division of Taxation itself, as the contact person and responsible person for New York taxes by signing state tax returns and checks accompanying the returns, executing a sales tax certificate of authority listing himself as the corporation's responsible person, filling out the Division's 'Responsible Person Questionnaire,' and maintaining communication with the Department" (*id*. at 1485).  Two dissenters would have annulled the Tribunal's determination on the ground that the Tribunal erred by purportedly focusing on whether petitioner demonstrated that he "lacked control and authority over the affairs of [NECC]," rather than whether petitioner had control over NECC's finances (*id*. at 1488 [internal quotation marks and citation omitted]).

Petitioner now appeals as of right under CPLR 5601 (a) based on the two-judge dissent.

II.

Under Tax Law § 685 (g), a person may be held liable for the withholding taxes of a corporation if the person is "required to collect, truthfully account for, and pay over the

tax imposed" and "willfully fails to collect such tax or . . . willfully attempts in any manner to evade or defeat the tax or the payment thereof." As this Court has previously explained, section 685 (g) essentially provides that "a person responsible for collecting and paying taxes withheld from employees' wages is liable for a 100% civil penalty if [that person] willfully fails to collect and pay over the tax" (*Matter of Levin v Gallman*, 42 NY2d 32, 33 [1977]). Such a responsible person includes "an officer or employee of a corporation . . . who . . . is under a duty to perform the act in respect of which the violation occurs" (Tax Law § 685 [n]). Under the broad terms of this definition, more than one person can be a responsible person under Tax Law § 685.[2] Because section 685 (g) was modeled after 26 USC § 6672 (a) (*see Matter of Levin*, 42 NY2d at 33-34), the terms in the former are to be interpreted in conformity with the latter unless a different meaning is clearly required (*see* Tax Law § 607 [a]; *Matter of Michaelsen v State Tax Commn.*, 67 NY2d 579, 583 [1986]).

Contrary to the assertions of petitioner and the dissent that the Appellate Division and Tribunal violated the doctrine of federal conformity, review of the relevant case law reveals that the standard employed below is the same in all relevant respects as that applied by federal courts for determining whether an individual is a responsible person under 26 USC § 6672 (a). Thus, there was no compromise of the doctrine of federal conformity here. Both the state and federal tests require that a person have, as the Tribunal put it, the type of "control and authority over the affairs of" the corporation that would render the

---

[2] We therefore reject any suggestion that evidence of Anthony Nastasi's control over NECC's finances alone is sufficient to absolve petitioner of liability under Tax Law § 685.

person "under a duty to collect and pay over withholding taxes," necessarily meaning that the person had the actual authority and ability to pay the overdue taxes. The factors considered by both state and federal courts in determining whether an individual is such a responsible person clarify that the standard, even if not fully articulated in every case, examines whether the individual had actual authority over the corporation's financial affairs such that the person had the ability or effective power to remit the overdue taxes.

The federal cases employ a non-exclusive list of factors in determining whether an individual has significant control over a corporation's finances. The factors tend to focus on whether the individual

> "(1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority"

(*Vinick v United States*, 205 F3d 1, 8 [1st Cir 2000], quoting *Fiataruolo v United States*, 8 F3d 930, 939 [2d Cir 1993]). Despite petitioner's protestations to the contrary, holding oneself out as a responsible person is a relevant factor under federal law (*see Hochstein v United States*, 900 F2d 543, 548 n 1 [2d Cir 1990]). As in the state courts, no single factor is determinative in the federal courts, and the totality of the circumstances must be

considered (*see Matter of Menik v Roth*, 280 AD2d 702, 703 [3d Dept 2001]; *Fiataruolo*, 8 F3d at 939).[3]

Notably, the factors employed by the federal courts do not merely look to whether the individual had authority over the finances of the corporation at issue but "divide into the following three groups: (1) those that identify the [person's] status within the corporation, (2) those that identify [the person's] involvement in the daily affairs of the corporation, and (3) those that identify [the person's] involvement in the financial affairs

---

[3]   The dissenters insist that all of the seven factors laid out in *Vinick* are "mandatory inquiries under federal law" and conclude that the Tribunal erred in failing to expressly consider each of those factors (dissenting op at 10).  However, other federal courts also phrase the list differently and sometimes leave out certain factors, depending on their relevance to the particular case before the court (*see e.g. Thosteson v United States*, 331 F3d 1294, 1299 [11th Cir 2003], *cert denied* 540 US 1105 [2004] ["Indicia of responsibility include the holding of corporate office, control over financial affairs, the authority to disburse corporate funds, stock ownership, and the ability to hire and fire employees"]; *Plett v United States*, 185 F3d 216, 219 [4th Cir 1999] [listing the factors as "(1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees"]; *Barnett v IRS*, 988 F2d 1449, 1455 [5th Cir 1993], *cert denied* 510 US 990 [1993] [looking to whether the individual "(i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of funds and payment of creditors; and (vi) possesses the authority to sign company checks"]; *Hochstein*, 900 F2d at 547 ["Courts consider several factors in determining whether an individual is responsible for collecting and paying withholding taxes, including the individual's duties as outlined in the corporate bylaws, . . . ability to sign checks, . . . status as an officer or director, and whether (the individual) could hire and fire employees"]).  In any event, because the dissenters go on to dismiss most of the factors set forth in *Vinick* as insufficient to assess whether a person has actual authority to pay taxes owing (dissenting op at 11-13), their insistence that all seven factors must be expressly considered by the Tribunal is puzzling at best.

of the corporation" (*Vinick*, 205 F3d at 8).  Application of those factors is meant to resolve the "crucial inquiry [of] whether the person had the 'effective power' to pay the taxes— that is, whether [the person] had the actual authority or ability, in view of [the person's] status within the corporation, to pay the taxes owed" (*id.* [citation omitted]).  Moreover, the requisite "control may be shared by several people within a company, all of whom may be found responsible for a tax delinquency," and, while technical or titular authority is not sufficient, "a person need not have the final word on which creditors are to be paid or how funds are to be allocated" to be deemed a responsible person (*Fiataruolo*, 8 F3d at 939).

The factors applied by the Tribunal and appellate courts of this state serve the same end and are derived from federal case law.  Indeed, the case cited by the Appellate Division for the list of factors relevant in this case, *Matter of Malkin v Tully*, compiled the list from factors in federal cases (65 AD2d 228, 231 [1978]).  *Malkin* described the relevant factors as "whether the petitioner signed the tax return, derived a substantial part of his income from the corporation, . . . had the right to hire and fire employees," and "was authorized to sign checks" (65 AD2d at 231 [citations omitted]).  This Court endorsed the use of the *Malkin* factors shortly after that case was decided (*see Matter of MacLean v State Tax Commn.*, 49 NY2d 920 [1980], *affg on op below* 69 AD2d 951, 951-952 [3d Dept 1979]).  Because "[t]he factual nature of the determination precludes an exhaustive list of factors" (*Matter of Basch v New York State Tax Commn.*, 134 AD2d 786, 787 [3d Dept 1987]), the list of factors considered in the state courts has evolved over time, just as it has in the federal courts.  Additional relevant factors that have been considered include status as a corporate officer, shareholder and signatory on corporate bank accounts (*see Matter of*

*Menik*, 280 AD2d at 703; *Matter of Hopper v Commissioner of Taxation & Fin.*, 224 AD2d 733, 737 [3d Dept 1996], *lv denied* 88 NY2d 808 [1996]), authority over the management of the corporation's affairs (*see Matter of Menik*, 280 AD2d at 703; *Matter of Risoli v Commissioner of Taxation & Fin.*, 237 AD2d 675, 676 [3d Dept 1997]), authority to direct payment of corporate bills and to make payroll (*see Matter of Fisher v State Tax Commn.*, 90 AD2d 910, 911 [3d Dept 1982]; *Matter of McHugh v State Tax Commn.*, 70 AD2d 987, 988 [3d Dept 1979]), and whether the individual has direct involvement in attempting to resolve a corporation's financial problems, including tax liabilities (*see Matter of Risoli*, 237 AD2d at 676; *Matter of Martin v Commissioner of Taxation & Fin.*, 162 AD2d 890, 891 [3d Dept 1990]).  As in the federal courts, holding oneself out as a responsible person is also a relevant factor (*see Matter of Martin*, 162 AD2d at 891).

The list of factors that the state courts and the Tribunal consider may be more extensive than that set forth in the federal cases on which petitioner relies and, certainly, not every court mechanistically repeats and analyzes each of the factors in the same way in every case, as the dissenters would require of the Tribunal.  But, regardless of the iteration, the essential question remains whether the person had the actual authority and ability or effective power to pay the taxes owed.  Or, as the Appellate Division has framed the issue, consideration of the factors answers the question of whether the "petitioner had the authority to act on behalf of the corporation . . . and was personally involved in the financial affairs of the corporation during the audit period" (*Risoli*, 237 AD2d at 676).[4]

---

[4] The dissenters do not dispute that our state appellate decisions pertaining to the responsible person test conform with federal law (dissenting op at 14), but they insist that

Here, as noted above, the Tribunal articulated the test as "whether petitioner presented facts showing that [he] lacked control and authority over the affairs of NECC." While the phrase "control and authority over the affairs of NECC" is , perhaps, imprecise because it *could* be interpreted to mean control over "daily field operations" without regard to one's effective control over *financial affairs* and ability to pay overdue taxes, the factors the Tribunal considered make clear that it viewed the phrase as encompassing consideration of both petitioner's status in the corporation and whether petitioner had control and authority over the finances of NECC such that he could have paid the taxes.

The Tribunal noted that "petitioner was an officer of NECC and its majority shareholder, managed its field operations, had check signing authority, filed tax returns on behalf of the company and had considerable economic interest in NECC," as well as noting that petitioner had held himself out to the Department as a responsible person and negotiated a delay in the payment of overdue taxes because "he had to make payroll," and

---

the Tribunal could not have applied the same test that is employed by the federal courts because the Tribunal did not cite federal case law (dissenting op at 8). Of course, there is no support for the dissenters' novel requirement that an administrative agency must cite federal case law. Moreover, the Appellate Division decisions cited by the Tribunal reinforce the conclusion that the Tribunal understood the test to be whether petitioner had the actual authority and ability to pay the withholding taxes. In determining whether the petitioners were responsible persons within the meaning of Tax Law § 685, the cited cases look to whether the petitioner was involved in the financial management of the corporation and payment of employees, decided which outstanding bills were to be made and controlled the assets of the corporation (*see Matter of Cohen v State Tax Commn.*, 128 AD2d 1022, 1023-1024 [3d Dept 1987]; *Matter of Amengual v State Tax Commn.*, 95 AD2d 949, 950 [3d Dept 1983]; *Matter of McHugh v State Tax Commn.*, 70 AD2d 987, 988 [3d Dept 1979]). Review of these cases alone is sufficient to resolve the dissenters' criticism of the Tribunal that this Court has been forced to "guess as to the test that the Tribunal applied" (dissenting op at 8).

that bank signature cards reflected that petitioner could withdraw funds independently from the corporate bank account, while Anthony Nastasi could not.

Although the dissenters state that there was "a paucity of factors applied by the Tribunal that resemble factors applied by the federal courts" (dissenting op at 9), we note that the Tribunal expressly considered four of the seven factors set forth in *Vinick* (205 F3d at 8), as well as petitioner's holding oneself out as a responsible person, which is also a relevant factor under federal law (see *Hochstein*, 900 F2d at 548 n 1). The dissenters further posit that the Tribunal failed to consider the two factors that they deem most important, i.e., whether a person makes decisions regarding the repayment of outstanding debts or taxes and exercises control over daily bank accounts and disbursements (dissenting op at 11). However, the Tribunal noted that petitioner had informed the Department at one point that he could not pay amounts due because he had to make payroll—demonstrating that it considered petitioner's previous claims to the Department that he was making decisions regarding which, when and in what order NECC's debts would be paid—and the Tribunal's determination that petitioner exercised control over daily bank accounts and disbursements is readily inferable from its reference to the bank signature cards. Reading the phrase "control and authority over the affairs of NECC" in the context of the factors that the Tribunal considered indicates that it employed the proper legal standard, that is, whether petitioner had authority and control that would enable him to actually pay the overdue taxes.

III.

As petitioner argues, the substantial evidence and rationality standards are not relevant to determining the correct legal standard to be applied in determining whether an individual is a responsible person within the meaning of the Tax Law (*see Levin*, 42 NY2d at 34). However, having concluded that the proper legal standard was applied, we note that, "[i]n the evidentiary hearing before the [Department] the petitioner has the burden of proving the deficiency assessment improper, and if there are any facts or reasonable inferences from the facts to support the . . . determination, the assessment should be confirmed" (*id.* at 34 [citation omitted]). Stated differently, petitioner bore the burden at the hearing and the determination must be upheld if "there is substantial evidence in the record to support the determination of the Tax Appeals Tribunal imposing personal liability on petitioner pursuant to Tax Law § 685 (g)" (*Matter of Menik*, 280 AD2d at 703). Applying the substantial evidence standard, the "question . . . is not whether [the reviewing court] find[s] the proof . . . convincing, but whether the [agency] could do so" (*Matter of Marine Holdings, LLC v New York City Commn. on Human Rights*, 31 NY3d 1045, 1047 [2018] [internal quotation marks and citation omitted]).

Here, substantial evidence in the record supports the Tribunal's determination that petitioner did have actual authority over NECC's finances and the ability to remit the overdue withholding tax during the relevant time period. As set forth in the Tribunal's decision, it is undisputed that, during the audit period, petitioner was NECC's majority shareholder; derived significant income and tax benefits from NECC as its president; had broad oversight authority over daily field operations; represented to the Department that he was authorized to resolve NECC's financial problems; was directly involved in

negotiating a resolution of NECC's tax liabilities with the Department as the latter's primary contact at NECC; signed the checks remitting full payment for other tax amounts due; and held himself out to be the owner and principal officer of the corporation with control over its financial affairs. This documented proof provides substantial evidence for the Tribunal's determination and, thus, the determination must be sustained "irrespective of whether a similar quantum of evidence is available to support other varying conclusions" (*Matter of Haug v State Univ. of N.Y. at Potsdam*, 32 NY3d 1044, 1046 [2018]).

To be sure, the testimony of petitioner, Probst and Pillari—some of which was self-interested—and Nastasi's affidavits submitted to the IRS may have called the veracity of the documentary evidence into question if that testimony was credited. However, "it was the province of the [Department] to resolve any conflicts in the evidence and make credibility determinations" (*Haug*, 32 NY3d at 1046). Petitioner expressly placed his credibility—along with that of Nastasi—into issue by insisting that their prior representations of petitioner's authority and control were intended only to create the false impression that petitioner controlled NECC in order to obtain lucrative state contracts. Petitioner, who admitted to lying to the Department when it suited him, did not disavow the documents establishing that he had authority and control over NECC's finances until those representations no longer benefited him financially. The Tribunal was free to reject petitioner's testimony as lacking in credibility and insufficient to overcome the proof that petitioner did have actual authority over NECC's finances. To accept as true and "undisputed" all of the testimony, as the dissenters do (dissenting op at 13), when the administrative factfinder had rejected the same as lacking credibility would be to violate

the fundamental tenet governing review of administrative determinations—"'[c]ourts may not weigh the evidence or reject [a] determination where the evidence is conflicting and room for choice exists'" (*Matter of Marine Holdings*, 31 NY3d at 1047, quoting *Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]).

Turning to willfulness, the test in New York is also consistent with that employed under federal law; the question is "whether the act, default, or conduct is consciously and voluntarily done with knowledge that as a result, trust funds belonging to the Government will not be paid over but will be used for other purposes" (*Matter of Levin*, 42 NY2d at 34). Petitioner was concededly aware that Nastasi was not paying withholding taxes and testified that he repeatedly discussed the matter with Nastasi. Yet petitioner continued to use his authority as president and majority shareholder to maintain MBE status and delay the tax collection actions by informing the Department that he would pay the taxes despite his awareness that Nastasi was using trust funds belonging to the government for other purposes. While doing so, petitioner benefitted from Nastasi's actions and the fraud that they both perpetrated on the Department because petitioner's representations were essential to keeping the corporation afloat, enabling him to receive a salary, allocate business losses and secure a job for his daughter. Thus, the finding of willfulness is supported by substantial evidence as well.

Accordingly, the judgment of the Appellate Division should be affirmed, with costs.

TROUTMAN, J. (dissenting):

In derogation of the doctrine of federal conformity, the Tax Appeals Tribunal failed to apply the "actual authority" or "effective power" test used by federal courts when determining whether petitioner could be held personally liable as a "responsible person"

for unpaid employee withholding taxes owed by New England Construction Company (NECC).  Because the majority does not recognize from the record below that the Tribunal failed to apply the appropriate standard, I dissent.

It is undisputed that the doctrine of federal conformity governs the tax proceedings that the Department of Taxation and Finance brought against this petitioner under Tax Law § 685 (g).  That doctrine has long been in existence, and it holds that, where there is a provision of New York tax law that is modeled after a virtually identical provision in the Internal Revenue Code (IRC), that provision of New York tax law should be construed in conformity with the IRC (*see Matter of Friedsam v State Tax Commn.*, 64 NY2d 76, 80-81 [1984]; *Matter of Marx v Bragalini*, 6 NY2d 322, 333 [1959]).  The doctrine of federal conformity is now enshrined by the legislature in Tax Law § 607 (a) for the purpose of "provid[ing] a statutory mandate to assure conformity" (*Friedsam*, 64 NY2d at 80; *see* Tax Law § 607 [a] ["Any term used in this article shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required"]).

As is relevant here, Tax Law § 685 (g), under which petitioner was charged, provides that where a person is responsible to pay withholding taxes and fails to pay them willfully, they may be held personally liable.  In other words, section 685 (g) allows the State to pierce the corporate veil and hold someone personally liable if they are

responsible for paying taxes and fail to do so willfully. The language of section 685 (g) is in all material respects the same as 26 USC § 6672 (a) of the IRC.

Despite this similarity, the Tribunal and the Internal Revenue Service (IRS) reached different determinations about petitioner's liability under those respective statutes, with the Tribunal finding that petitioner was liable under Tax Law § 685 (g) and the IRS finding that he was not liable under 26 USC § 6672 (a). The reason for this discrepancy may well be explained by the differences in the evidence presented to the two tribunals. But what we know for sure is that the Tribunal failed to apply the same federal test for liability that the IRS is bound to apply. In doing that, the Tribunal violated the doctrine of federal conformity.

## I

One evident and uncontroverted fact in this case is that petitioner is not a completely sympathetic person, as the dissenting justices at the Appellate Division aptly pointed out:

> "[P]etitioner, by his own account, engaged in a highly inappropriate scheme of falsely holding himself out as NECC's financial decisionmaker for purposes of retaining its status as a minority owned business enterprise (hereinafter MBE). Such behavior violated the MBE requirements. Nevertheless, there are regulatory provisions to address such a scenario, and the question before this Court is not the appropriateness of petitioner's conduct, but the propriety of the Tribunal's determination that he should be held personally liable for the corporation's tax liability" (206 AD3d 1482, 1486).

It is through this lens that the facts of this case are best viewed.

Petitioner began his career in 1986 as an apprentice carpenter for Nastasi White, going on to work for Nastasi & Associates after it splintered off from Nastasi White. In 1994, petitioner formed NECC, a drywall, acoustical ceilings, and millwork construction company. Petitioner's purpose in forming NECC included getting the corporation certified as a minority business enterprise to gain access to state contracts with minority access goals. Thereafter, petitioner and the owners of Nastasi & Associates arranged for petitioner to take over Nastasi & Associates' minority subcontracts. At all relevant times, petitioner was president and a 51% shareholder of NECC, with the remaining shares belonging to family members or owners of Nastasi & Associates.

In 2005, Anthony Nastasi took over the financial affairs and management of NECC. That same year, petitioner entered into an agreement with Nastasi & Associates, which recited that "[w]hereas [NECC] was indebted to [Nastasi & Associates] for more than [$4,000,000], and the parties desire to order their relationship in the event of certain contingencies," the parties agree that, "upon the written demand of Anthony Nastasi," petitioner would resign his position as president of NECC and would be deemed to have sold his 26 shares of NECC common stock to Nastasi for $26. Although the agreement allowed for another outcome if NECC paid off its financial obligation to Nastasi & Associates, that never happened.

Starting in 2012, NECC began to encounter tax liabilities, including issues regarding employee withholding taxes. In 2015, Nastasi terminated petitioner pursuant to the 2005 agreement, purchased petitioner's shares of NECC, and became its sole owner.

Because NECC had been incurring federal and state liability for unpaid employee withholding taxes since 2012, in early 2015 the IRS issued petitioner an assessment holding him personally liable for NECC's unpaid federal taxes. However, the IRS subsequently canceled the assessment after petitioner challenged it, finding that he was not a person responsible for paying NECC's taxes under federal law. The IRS based its decision, in part, on sworn affidavits in which Nastasi averred that he himself had sole authority to pay NECC's accrued liabilities, including tax obligations, and that petitioner's authority over NECC's bank account was limited to paying the costs of its field operations.

In December 2015, the State Division of Taxation issued petitioner notices of deficiency for unpaid withholding taxes under New York's parallel delinquent tax statutes, asserting that he was a person responsible for paying NECC's taxes. After a hearing before an administrative law judge, the Tax Appeals Tribunal (Tribunal) rejected petitioner's challenge to the assessment, determining that it was not bound by the federal determination and that petitioner was responsible for the tax and willfully failed to pay it.

The Appellate Division confirmed the Tribunal's determination in a 3-2 decision. The majority reasoned that "it is undisputed that petitioner was president, the majority

shareholder, had check signing authority, was involved in daily field operations and derived a substantial part of his income from NECC" (206 AD3d at 1485). The Court also relied on the fact that petitioner "held himself out" to tax officials as the "responsible person for New York taxes" (*id*.). The majority further held that petitioner's failure to pay was willful (*see id*. at 1485-1486).

In my view, the two dissenting Justices at the Appellate Division homed in on the key problem with the analysis of the majority below, which applies equally to this Court's majority opinion. The problem is the failure of the Tribunal to apply the federal standard for determining whether petitioner is a person responsible, under the Tax Law § 685 (g), for paying the taxes owed to the State.

II

The majority acknowledges that the doctrine of federal conformity applies to Tax Law § 685 (g), inasmuch as it is "modeled after 26 USC § 6672 (a)" of the IRC (majority op at 9, citing *Matter of Levin v Gallman*, 42 NY2d 32, 33-34 [1977]). Consequently, the test for who constitutes a responsible person liable for unpaid taxes is the same under both statutes.

Federal courts view the responsible person test as being a "functional" test (*Gephart v United States*, 818 F2d 469, 473 [6th Cir 1987]). "It is a test of substance, not form" (*Godfrey v United States*, 748 F2d 1568, 1576 [Fed Cir 1984]). The critical inquiry in determining whether someone is a "responsible person" is if they had the

"effective power" or "actual authority or ability" to pay the taxes owed by the corporation (*Erwin v United States*, 591 F3d 313, 321 [4th Cir 2010]; *Plett v United States,* 185 F3d 216, 219 [4th Cir 1999]).  In other words, under the federal test, "[w]hether one is considered a person responsible for paying over such taxes to the government . . . is a question 'focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation, and, specifically, disbursements of funds and the priority of payments to creditors' " (*Kinnie v United States*, 994 F2d 279, 283 [6th Cir 1993], quoting *Gephart*, 818 F2d at 473).

In applying this federal test to an individual, federal courts examine seven, non-exclusive, factors that inquire into whether the person

> "(1) is an officer or member of the board of directors, (2) owns shares or possesses an entrepreneurial stake in the company, (3) is active in the management of day-to-day affairs of the company, (4) has the ability to hire and fire employees, (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, (6) exercises control over daily bank accounts and disbursement records, and (7) has check-signing authority" (*Vinick v United States*, 205 F3d 1, 7 [1st Cir 2000], quoting *Fiataruolo v United States*, 8 F3d 930, 939 [2d Cir 1993]).

"No single factor is determinative of responsibility" and the "totality of the circumstances" must be considered (*Vinick,* 205 F3d at 8 [internal quotation marks omitted]).  The seven factors serve as a guide—not a mechanistic checklist—for answering the "core question" of whether an "individual has *significant control* over the

enterprise's finances" (*Fiataruolo,* 8 F3d at 939 [internal quotation marks omitted]).  The test "is meant to encompass all those connected closely enough with the business to prevent the tax default from occurring," but it "is not meant to ensnare those who have merely technical authority or titular designation" (*id*. [internal quotation marks and brackets omitted]).

III

Unfortunately, this federal test is not the test that the Tribunal applied.  How do we know?  Well, one glaring indicator is that the federal test is never referenced in its opinion.  In fact, there is not one citation to federal case law in that regard.

But the problem runs far deeper than that.[1]  The majority's best guess as to the test that the Tribunal applied is " 'whether petitioner presented facts showing that [he] lacked control and authority over the affairs of NECC' " (majority op at 7, 14).  But that is not the federal test, which looks instead to whether petitioner presented facts demonstrating

---

[1] Regrettably, the majority opinion misapprehends the points raised in this dissent as "insist[ing] that the Tribunal could not have applied the same test that is employed by the federal courts because the Tribunal did not cite federal case law" or as "require[ing] that an administrative agency must cite federal case law" (majority op at 13-14 n 4).  A simple reading of this dissent shows that those statements by the majority are inaccurate.  What is true is that the Tribunal's failure to cite federal case law is a symptom of the Tribunal's failure to apply the doctrine of federal conformity.  The majority is confusing a reference to a symptom of the Tribunal's error with the diagnosis of the error infecting the Tribunal's opinion, which is the true focus of this dissent.

that he did not have the "effective power" or "actual authority or ability" to pay the taxes owed by NECC (*Erwin*, 591 F3d at 321; *Plett,* 185 F3d at 219).

The majority's description of the Tribunal's test as being "imprecise" is charitable, but it misses the crucial discrepancy between that test and the federal test (majority op at 14). The Tribunal's test fails to inquire into whether petitioner "could have paid the taxes, but chose not to do so" (*Vinick,* 205 F3d at 9). Simply put, whether someone had some "control and authority over the affairs of a corporation" does not necessitate a determination that they had the effective power, actual authority, or actual ability to pay the corporation's taxes.

Attempting to rectify this incongruity, the majority points to the few factors that the Tribunal did analyze that cross over with factors analyzed under the federal test. However, that gesture fails to vindicate the majority's position given the paucity of factors applied by the Tribunal that resemble the factors applied by federals courts:

> "The Tribunal concluded that petitioner was 'under a duty to collect and pay over withholding taxes' based upon the evidence that he was an officer and majority shareholder of NECC, managed its field operations, had check signing authority, filed tax returns on behalf of the company, had considerable economic interest in NECC and held himself out as a responsible person to third parties, including the Department" (majority op at 7; *see id*. at 14-15).

The fact that certain of these factors may engage in some of the same inquiries as the federal test does not make up for the fact that they are being used for a completely different purpose.  Under the Tribunal's test, these factors explore the issue of whether petitioner lacked some ambiguous amount of control and authority over the affairs of NECC.  But the factors under the federal test are used to pinpoint whether the type of control and authority over the affairs of NECC wielded by petitioner would give him effective power or actual ability to pay delinquent taxes.  No matter how similar some of the Tribunal's factors are to the federal factors, that similarity does not demonstrate that the Tribunal and the federal courts are applying the same test, inasmuch as those factors are being used in different ways to make different determinations.

This discussion of the factors used by the Tribunal brings up another problem. The Tribunal also fails to apply all the factors applied under the federal test.  Although it is true that the factors are not exhaustive, the majority points to nothing that shows that those factors are not mandatory inquiries under federal law.  As the Appellate Division warned in a case cited by the majority: "While no one factor is controlling, all must be considered" (*Matter of Malkin v Tully*, 65 AD2d 228, 231 [3d Dept 1978]).[2]  The Tribunal failed to do that.

---

[2] However, to the extent that this decades-old state court decision cited by the majority considers only a small fraction of the factors now weighed by the U.S. Court of Appeals,

Compounding the Tribunal's error, the subset of federal factors applied by the Tribunal do not sufficiently assess whether a person has actual authority to pay taxes, inasmuch as those factors fail to identify "most readily [a] person who could have paid the taxes, but chose not to do so" (*Vinick*, 205 F3d at 9, citing *Morgan v United States,* 937 F2d 281, 284 [5th Cir 1991] ["The central question is whether an individual had the effective power to pay taxes"]).  But that is precisely what is done under the fifth and sixth factors of the federal courts' standard inquiry.  Those factors delve into "whether the individual . . . (5) makes decisions regarding which, when and in what order outstanding debts or taxes will be paid, [and] (6) exercises control over daily bank accounts and disbursement records" (*Vinick*, 205 F3d at 7).  Factors five and six are two of the three federal factors that go to "the heart of the matter," and five is "the most important" (*id*. at 9).  Although arguments regarding those factors were raised by petitioner before the Tribunal, there is no indication in the Tribunal's opinion that it analyzed either of those factors in reaching its conclusion.

Indeed, the factors considered by the Tribunal as part of its analysis do not meaningfully point towards who "had or exercised control of the collection, accounting for, and payment over of taxes" (*Godfrey*, 748 F2d at 1576).  Petitioner's having been an officer of NECC and its majority shareholder is certainly some indication of his status

---

the decision applies an obsolete approach to the federal responsibility test (*see* majority at 12).

within the corporate structure.  However, "titular authority is insufficient to create liability" (*Vinick*, 205 F3d at 8).  "Like corporate title, share ownership is a factor, but not all shareholders are responsible persons" (*id.*, citing *O'Connor v. United States*, 956 F2d 48, 51-52 [4th Cir 1992] ["To ignore (the separation of ownership and authority) would be to envelop within 'responsible person' all significant investors with titles in corporations which fail to pay their withholding taxes"]).  "Furthermore, share ownership is not a predicate to finding responsibility" (*id.*).

Additionally, the fact that petitioner "managed [NECC's] field operations" does not implicate him in having "significant control over [NECC's] finances" (*Hochstein v United States,* 900 F2d 543, 547 [1990]), because, without more, the two functions are significantly distinct.  Nor do inquiries into petitioner's authority to file tax returns on behalf of NECC or his considerable economic interest in NECC, without more, lead to a determination that petitioner "had or exercised control of the collection, accounting for, and payment over of taxes" (*Godfrey,* 748 F2d at 1575 [holding that "(t)he mechanical dut(y) of . . . preparing tax returns (is) not determinative of liability" (*id*. at 1575)]).

Furthermore, although a person's "being held out as an officer of the corporation" can be "relevant to [their] status as a responsible person," it must still be accompanied by "the authority to direct the payment of corporate funds" (*Hochstein*, 900 F2d at 546, 548

n 1).[3]  For example, the Second Circuit in *Hochstein* found a corporate controller to be a

responsible person where, in addition to being held out as an officer, he "also exercise[d]

significant control over [the corporation's] finances," including having authorization to

sign checks in any amount; having the authority to sign and file the corporation's tax

returns; having dealt with the corporation's financing partner on a daily basis during the

corporation's financial troubles; having made the initial determination of the order in

which large bills were to be paid, subject to the approval of the corporations president;

having the discretion to pay smaller bills; and having overseen the corporation's

bookkeeping (*see id*. at 547-548).  In contrast, here, the Tribunal failed to analyze

petitioner's actual authority to exercise significant control over the corporation's

finances.

And although the majority also points to petitioner's check signing authority as an

important factor, "case law discloses that authority to sign checks, without more, is a

weak pillar on which to rest a liability determination that a person is properly subject to a

. . . penalty" (*Vinick*, 205 F3d at 10 [internal quotation marks omitted]; *see Godfrey*, 748

F2d at 1575 ["The mechanical duties of signing checks and preparing tax returns are not

determinative of liability"]).  Thus, merely looking to petitioner's check signing authority

---

[3] As counsel for the Tribunal conceded at oral argument, the Tribunal's focus on petitioner's holding himself out as a responsible person on a questionnaire was not raised for the purpose of invoking principles of estoppel, rather it was raised as one additional factor worth considering.

provides an incomplete picture without considering "the context of financial control" within NECC (*Vinick*, 205 F3d at 10). This is crucial given that it is undisputed that petitioner did not have access to the corporation's checkbook, because it was in Nastasi's closed safe approximately 40 miles away from petitioner's office.

It is further undisputed that petitioner had nothing to do with hiring and firing employees of NECC and that he had nothing to do with payroll. Moreover, petitioner's witnesses at the administrative hearing were unanimous in stating that NECC was Nastasi's company and that he exercised complete financial control.

Although the majority notes that there are several ways in which courts phrase the factors that are examined under the responsible person test, that is not a reason to claim that the Tribunal applied the federal test, when it clearly did not (*see* majority op at 11 n 3). Instead, that is a reason for this Court to give the Tribunal guidance as to which factors it must apply under the doctrine of federal conformity. Beyond that, it is worth noting that the federal cases cited by the majority all examine factors that, like factors five and six of the standard seven-part test, are aimed at determining whether an individual had the effective power to pay taxes (*id.*).

Furthermore, although the majority takes great length to demonstrate that the Appellate Division's decisions pertaining to the responsible person test conform with

federal law, the concern here is not whether the Appellate Division applies the correct test.  The concern is that the Tribunal did not.[4]

Along those lines, it is noteworthy that there is minimal daylight between the majority's understanding of the test for a responsible person and the test that I have explained is applied by the federal courts.  Our disagreement is primarily over whether the Tribunal applied the correct test, but it is not so much over the nature of that test.  In the end, we all agree that the test requires a determination that "the person had the actual authority and ability or effective power to pay the taxes owed" (majority op at 13).

IV.

None of this is to say that this Court should find that the Tribunal's decision was not supported by substantial evidence.  As the majority points out, petitioner held himself out as a responsible person, most notably by completing a "responsible person questionnaire" in 2012; such evidence could of course weigh heavily, so long as the proper test is applied.

---

[4] Tellingly, the Appellate Division's decisions cited by the Tribunal fail to anchor their analysis of various factors to any overarching responsible person test (*see Matter of Cohen v State Tax Commn.*, 128 AD2d 1022, 1023-1024 [3d Dept 1987]; *Matter of Amengual v State Tax Commn.*, 95 AD2d 949, 950 [3d Dept 1983]; *Matter of McHugh v State Tax Commn.*, 70 AD2d 987, 988 [3d Dept 1979]).  Although this is problematic in a different way than the Tribunal's reliance on the wrong test, it is still problematic (*see supra* at 8-10).

My desired result would be simply for this Court to reverse on the law and remit to the Appellate Division with instructions for that Court to remand the matter to the Tribunal so that it can review this matter applying the correct federal standard for determining if petitioner is a "responsible person" under Tax Law § 685 (g).  Although the majority has chosen not to take that path in this case, there is clearly a need for this Court to provide the Tribunal and the Appellate Division with guidance to avoid them going further afield.

Judgment affirmed, with costs. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia and Singas concur. Judge Troutman dissents in an opinion, in which Judge Halligan concurs.

Decided November 20, 2023